JOHN R. LUCAS v. STATE OF NEBRASKA.

FILED MARCH 7, 1907. No. 14,663.

1. **Homicide: INSTRUCTION: MALICE: PRESUMPTION.** The law implies malice in cases of homicide if the killing alone is shown, but, if the circumstances attending the homicide are fully testified to by eye-witnesses, it is error to instruct the jury that there is a presumption of malice from the fact of the killing.

2. ———: EVIDENCE: MANSLAUGHTER. If the homicide is in self-defense, and there is no evidence that will warrant a finding beyond reasonable doubt that the accused purposely intended to kill the deceased unlawfully, he may still be convicted of manslaughter, if it sufficiently appears that with reasonable prudence and caution on the part of the defendant the killing might have been avoided.

3. Criminal Law: SECOND APPEAL: LAW OF CASE. If, upon a second appeal to this court, the same state of facts substantially is presented as upon the former appeal, the former decision upon the sufficiency of the evidence settles the law of the case and is conclusive.

ERROR to the district court for Harlan county: ED L. ADAMS, JUDGE. *Reversed.*

*H. M. Sinclair, F. G. Hamer* and *S. A. Dravo,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

SEDGWICK, C. J.

Upon a former trial of this case the defendant was convicted of the crime of murder in the first degree. Upon petition in error to this court the judgment of the district court was reversed and the cause remanded. The reason of this reversal was that the court considered that the evidence was not sufficient to justify the conviction of murder in the first degree. In the opinion then written an attempt was made to analyze the evidence given upon that trial, and to show fully the reasons for the conclusion that the evidence was not sufficient to justify the conviction. Upon the trial now being reviewed the defendant was convicted of murder in the second degree. It is contended by the defendant's counsel that the evidence upon this second trial is essentially the same as upon the former trial. The state, on the other hand, contends that there is some additional substantial evidence bearing upon the question of malice. It appears to be substantially ad-

mitted that the evidence now before the court includes all evidence given upon the former trial, the state's contention being that it has produced some additional evidence. In this condition of the record it is deemed unnecessary to again state in full the substantial facts of the case as detailed in the former opinion, which may be found in 75 Neb. 11.

1. There are several important questions presented upon the record which we deem it our duty to consider, which have been thoroughly and ably presented by the respective parties, but we will first call attention to an error in the instructions of the court which has not been much discussed on the part of the state, but which seems beyond question to require a reversal of the judgment. The tenth instruction given by the court upon its own motion was as follows: "In a case of homicide, the law presumes malice from the unlawful use of a deadly weapon upon a fatal part, and when the fact of unlawful shooting or killing, causing death, is proved, and no evidence tends to show express malice on the one hand, or any justification, mitigation or excuse on the other, the law implies malice, and the offense is then murder in the second degree. You are instructed that in law a loaded gun is a deadly weapon, and if you believe from the evidence, beyond a reasonable doubt, that the defendant, John R. Lucas, wantonly, cruelly, and without justification or excuse, shot and caused the death of Clyde Lester, or that he unlawfully caused the death of said Clyde Lester, with a deadly weapon, then the law presumes that such shooting was done maliciously, unless you believe from the evidence that it was done without malice." It will be remembered that there were several witnesses present at the time the homicide was committed. These witnesses were examined upon the trial, and it appears to be admitted that they were generally disinterested and honest witnesses, so that "all of the circumstances connected with the killing" were shown by the testimony of eye-witnesses. The question is whether in

such cases the jury are authorized to presume tl.     ˙ ⸴
ence of legal malice from the fact  ⌣⌣⸴⸴ the defendant
shot the deceased. Was the defendant actuated by a de-
sire and purpose to kill the deceased unlawfully? If he
was, he is guilty of murder in the second degree, even
though there was no premeditation or deliberation. If he
was not actuated by such desire and purpose to kill the
deceased unlawfully, but killed the deceased under a mis-
taken notion that the circumstances were such as to
justify the killing in self-defense, that is, if he acted
unreasonably, rashly and unnecessarily, but with a belief
at the time that the law would justify him in so acting,
and without any purpose or intent to kill the defendant
unlawfully, he is guilty of manslaughter. If in killing
the defendant he acted reasonably under the circum-
stances, that is, if the circumstances and appearances
were such as to cause a reasonably prudent and cautious
man to believe that such action was necessary to defend
his life, then he is not guilty, and such action would be
justifiable in self-defense. The question, then, whether
he acted with malice, that is, with a purpose to unlawfully
kill the deceased, is the controlling distinction between
the crime of murder in the second degree and the lower
crime of manslaughter. If, then, the law does not pre-
sume malice ·from the fact of the killing when all the
circumstances connected with the transaction are testi-
fied to by eye-witnesses, this instruction was wrong. If
the jury are to determine the grade of the offense depend-
ing upon the question of malice from the evidence of the
witnesses who saw the transaction, uninfluenced by any
presumptions against the defendant, then the instruction
cannot be sustained.

This question is by no means a new one. It has been
considered by many courts, and this court is fully com-
mitted thereon. In *Vollmer v. State*, 24 Neb. 838, the
first paragraph of the syllabus disposes of this question
finally as follows: "On a trial.for murder in the second
degree, malice can be implied only in cases where the kill-

ing alone is shown. Where, in such a trial, the evidence showed all the circumstances connected with the killing by the testimony of the eye-witness, it was held to be error for the court to instruct the jury that, where the fact of killing was established, without any excuse or explanatory circumstances, malice was presumed and the crime would be murder in the second degree," and the court in the opinion said:

"The doctrine contained in the instructions, when applied to a case in which nothing further than the killing is shown, is recognized by this court in the case cited, and in some others, but we think it can have no application to cases like the one at bar. All the circumstances of the killing are shown by those who were eye-witnesses." The presumption as to the motive of the homicide which the law derives from the mere act of killing arises from the necessity of the case. It is a presumption of fact. If the fact of the killing is proved, and none of the circumstances surrounding the act are shown, the existence of a motive and purpose to kill unlawfully is presumed, until the contrary appears; but, if the circumstances of killing are shown, then no presumption obtains. The motives actuating the defendant are to be derived by the jury from the circumstances surrounding his act. The rule established in *Vollmer v. State, supra,* is well supported by reason and authority, and under that rule this conviction cannot stand.

2. On the question of justifiable self-defense, the state has furnished us with an able and convincing argument. We are entirely convinced that upon the evidence in this record, this question should have been submitted to the jury with proper instructions. There is much evidence tending to show that the defendant acted hastily. As pointed out in the former opinion, the defendant saw the deceased, when at a considerable distance, coming toward the defendant's place in company with another man. The defendant thereupon went into his house and procured **the gun, which he had loaded with heavy buckshot, and**

went out into his yard to repel the deceased. The deceased was at some distance from the defendant at the time of the shooting. If the defendant supposed that he was armed, as he said that he would be, he still would not have been justified in killing the deceased until the danger to the defendant was so imminent as to cause a reasonably prudent man under the circumstances to consider such killing necessary. The deceased manifestly had no deadly weapon in his hands. He wore heavy mittens at the time. The defendant himself testified that he discharged his gun directly at the breast of the deceased. He fired the second shot "through the smoke" without waiting to see the result of the first. Although the defendant had reason to believe that he was armed in fact, and the manner of his approach was threatening, still the jury might be justified in finding that a reasonably prudent man under all the circumstances would have hesitated longer before taking such extreme measures. There were many circumstances, as shown in the former opinion, tending to justify the conduct of the defendant, but, upon the whole evidence, the jury might have found that the defendant was unwarrantably mistaken as to the real danger, or that he misunderstood his duty and his rights, and so took measures that reasonable prudence and caution would not admit. One who takes the life of another cannot justify himself upon the ground of ignorance, nor upon the ground that he acted in good faith in the matter, when the evidence shows that a reasonable man would not under such circumstances have supposed such action to be necessary. *Housh v. State*, 43 Neb. 163. If the defendant did not act in justifiable self-defense, he is guilty of manslaughter.

3. It is insisted by the state that the evidence upon this last trial is sufficient to justify the conviction of murder either in the first or second degree. A necessary element common to both of those grades of murder is a malicious motive; that is, a purpose and intention to take the life of the deceased unlawfully. That element

is as necessary to a conviction of murder in the second degree as it is to a conviction of the higher grade of crime. Upon a review of the evidence taken upon the former trial, it was held that the evidence was not sufficient to justify a finding beyond reasonable doubt that the defendant at the time of the homicide had the purpose and intent to kill the deceased unlawfully. It was believed that the defendant had determined to defend himself, and had resolved, if necessary for that purpose, to take the life of the deceased, but that there was not sufficient evidence to show that the defendant had formed the purpose and intention of taking the life of the deceased unless it should become necessary to do so in self-defense. The general rule of law is everywhere recognized that, if upon a second appeal the same state of facts substantially is presented as upon the former appeal, the former decision settles the law of the case and is conclusive. This rule has been applied in this state in prosecutions for murder (*Marion v. State,* 20 Neb. 233), and in very many other cases. The rule is a necessary one and properly discourages bringing cases to this court the second time upon questions that have already been determined in the case. When, however, a judgment has been reversed because of the failure of evidence upon some vital point, and the case has been retried, if the evidence is substantially different upon the second trial, it may justify a different conclusion, and the rule does not obtain.

The new evidence produced upon the last hearing is very meagre and relates principally to matters of nonessential details. It is insisted in the brief that there is additional evidence tending to show malice; that the defendant was actuated by a purpose and intent to unlawfully kill the deceased. The coroner testifies that he held an inquest upon the body, and that he heard some conversation of the defendant at the time; that in the course of that conversation some one standing there called out to the defendant and asked him: "Now haven't you some-

thing to wash this man up with?" And that the defendant said: "You can take that slop pail," and that the defendant spoke in a contemptuous tone. This last statement was stricken out by the court, and the witness was asked to give the exact words used by the defendant, and he then said that he thought the defendant said: "That is good enough to wash up the dirty hog." This was some seven or eight hours after the tragedy occurred. The witness did not attempt to state positively the words that the defendant used, but his evidence will reasonably bear the construction that the defendant spoke disrespectfully and slightingly of the deceased. This witness testified upon the first trial, and says that he was not then asked to state this conversation of the defendant. If this evidence is to be given its full effect, in view of the fact that there were several other persons present at the time that the conversation is supposed to have taken place, and that none of them testified to such words by the defendant, and that the defendant denies having used such language, still we think this alone, occurring at the time it did, was not sufficient to justify the resubmission to the jury of the question whether the defendant at the time of the shooting purposely intended to kill the deceased unlawfully. In view of the former trial and the decision of this court, the defendant should have been put upon trial upon a charge of manslaughter. If found guilty of that crime, his punishment would not exceed imprisonment in the penitentiary for 10 years, and would not justify the sentence for a period of 21 years, which at his time of life is substantially equivalent to a sentence for life, a punishment which the law imposes for cold-blooded and deliberate murder, when there are no circumstances mitigating the offense.

The judgment of the district court is reversed and the cause remanded.

REVERSED.