### ERNEST S. KENNISON v. STATE OF NEBRASKA.

FILED FEBRUARY 20, 1908.   No. 15,154.

1. **Homicide: MALICE: PRESUMPTIONS: INSTRUCTIONS.** The law im-
plies malice in cases of homicide if the killing alone is shown,
but, if the circumstances attending the homicide are fully tes-
tified to by eye-witnesses, it is error to instruct the jury that
there is a presumption of malice from the fact of the killing or
from the use of a deadly weapon. *Vollmer v. State*, 24 Neb. 838;
*Lucas v. State*, 78 Neb. 454.

2. ———: **INTENT: INSTRUCTIONS: QUESTION FOR JURY.** Where the
evidence of eye-witnesses shows that during or immediately after
a fist fight between the deceased and the defendant, in which the
defendant was being worsted, the defendant shot at, but missed,
the deceased, and that the fatal shot was fired almost im-
mediately thereafter during a struggle between them for the
possession of the revolver, an instruction which assumes the crime
to be murder in the second degree is erroneous, since it is for the
jury to determine from all the evidence before them the intent
with which the shooting was done.

3. ———: **INSTRUCTIONS: BURDEN OF PROOF.** An instruction that,

"if the jury believe from the evidence that the defendant un-
lawfully and feloniously shot deceased, Samuel D. Cox, and·that
said shot caused the death of said Cox, then, to reduce the killing
from murder to manslaughter, the jury must believe beyond a
reasonable doubt" that certain mitigating circumstances recited
therein existed, assumes that, if the defendant unlawfully killed
the deceased he was guilty of murder, and places the burden upon
him to establish beyond a reasonable doubt the existence of miti-
gating circumstances before the jury would be entitled to "reduce
the killing" from murder to manslaughter.

4. ——: ——: ——: PRESUMPTIONS. An instruction which,
if the killing is shown, assumes the crime to be murder, and re-
quires proof of a lower degree to be made by the defendant be-
yond a reasonable doubt before the jury will be justified in re-
ducing the degree to manslaughter, is inconsistent with instruc-
tions that the burden of proof in a criminal case never shifts,
but remains with the state throughout the trial, and that the
defendant is presumed to be innocent until proved to be guilty
beyond a reasonable doubt.

5. Criminal Law: INSTRUCTIONS: BURDEN OF PROOF. An instruction
which requires a defendant to prove beyond a reasonable doubt
his innocence of a graver crime before he can be found guilty of
a less heinous offense imposes an unwarranted burden upon the
defendant and is erroneous.

ERROR to ·the district court for Scott's Bluff county:
HANSON M. GRIMES, JUDGE. *Reversed.*

*Hamer & Hamer* and *M. J. Huffman,* for plaintiff in
error.

*W. T. Thompson, Attorney General,* and *Grant G. Mar-
tin, contra.*

LETTON, J.

An information was filed in the district court for Scott's
Bluff county, in which plaintiff in error was accused of
murder in the first degree in killing Samuel D. Cox by
shooting him with a pistol held by plaintiff in error. A
jury trial was had, which resulted in a verdict of guilty
of murder in the second degree, with recommendation that

47

the extreme penalty of the law for that degree be inflicted. The judgment of the court was that plaintiff in error be confined in the state penitentiary for the period of twenty-four years. The record is quite voluminous, and a number of errors are assigned, but in view of the conclusion which we have reached, and of the fact that the case will have to be again tried, it will not be necessary, nor would it be proper, for us to review the evidence or discuss the merits of the case as shown thereby. Motions were filed seeking a continuance of the cause, and also for a change of the venue to another county. Both were overruled, and complaint is made of the ruling on each motion. Both were supported by affidavits, and resisted by counter affidavits. In the rulings upon these motions we can discover no abuse of discretion, and are of the opinion that both motions were properly overruled. There is some complaint that the verdict was not supported by sufficient evidence, and that under the proofs it should have been an acquittal or, at most, not greater than manslaughter. We have carefully considered all the evidence introduced upon the trial, and think the verdict cannot be successfully assailed on that ground.

The defendant complains of the giving of the ninth instruction, given by the court upon its own motion. That part of the instruction complained of is as follows: "In cases of homicide, the law presumes malice from the unlawful use of a deadly weapon upon a vital part, and when the fact of unlawful killing or shooting causing death is proved, and no evidence tends to show or express malice on the one hand, or any justification, mitigation or excuse on the other hand, the law implies malice, and the offense is murder in the second degree. In law, a loaded gun or pistol is a deadly weapon, and if you believe from the evidence beyond a reasonable doubt that the defendant, Ernest S. Kennison, wantonly, cruelly and without justification or excuse shot Samuel D. Cox, and thereby caused his death, then the law presumes that such shooting was done maliciously, unless you are satisfied by the evidence

that it was done without malice." This instruction is in accordance with the ancient doctrine of the common law, which, after the fact of a killing was shown, imposed upon the defendant the burden of proving justification or excuse. This doctrine, however, has in this and other states long given place to the more modern and logical idea that the burden of proof in a criminal case does not shift, but remains with the state until the end of the trial, and that it is incumbent upon the state to prove beyond a reasonable doubt that the defendant's act was actuated by malice at the time the fatal shot was fired. Where no direct evidence is obtainable as to the circumstances immediately surrounding the killing, and the fact that the defendant killed another is proved, there is an inference that the killing was intentionally done. This inference arises from the nature of the circumstances, since it would be contrary to human experience to believe that the act was done without motive. If the killing was done, in fact, unintentionally or by accident, or if there existed justification or excuse for the same, the person who committed the act, in the absence of any witness, would be the only person who could furnish such evidence, hence, in such case, when the fact of the killing by a known person with a deadly weapon is proved, the inference or presumption arises that the killing was done intentionally, this being a rule of evidence founded upon the necessities of the case. But where all the circumstances surrounding the killing are testified to by witnesses, and the testimony of some of them would warrant the jury in finding that the killing was malicious, while the testimony of others, if believed, would warrant the jury in the conclusion that the fatal shot was fired by accident or in self-defense, then no presumption is to be indulged in. 1 Elliot, Evidence, secs. 90, 91, 98. The facts are all before the jury, and it is for them to say whether the killing was malicious, whether it was upon a sudden quarrel or in the commission of an unlawful act, or whether it was justifiable and excusable on the ground of self-defense or other equally valid rea-

sons. It is unnecessary at this time to enter into a full discussion of the history of the legal doctrine under discussion. The old and the new doctrines are set side by side in the opinion of Justice Shaw in *Commonwealth v. York,* 9 Met. (Mass.) 93, and the dissenting opinion of Judge Wild. See, also, Wharton, Criminal Evidence (8th ed.), secs. 738, 764; Wharton, Homicide (3d ed.), sec. 478; *Territory v. Lucero,* 46 Pac. (N. M.) 18, in which there is a full discussion of the conflicting doctrines, with many cases cited; *Territory v. Gutierez,* 79 Pac. (N. M.) 716. The law was settled nearly twenty years ago in this state on this point in the case of *Vollmer v. State,* 24 Neb. 838, in which it is said in the opinion by Chief Justice REESE, speaking of the following instructions: " 'You are instructed that, where the fact of the killing is established without any excuse or explanatory circumstances, malice is presumed, and the crime would be, under such circumstances, murder in the second degree.' This instruction is objected to as not being applicable to the case made, and as being prejudicial, and as tending to direct the attention of the jury to that particular quality of homicide. This instruction is perhaps based upon *Preuit v. People,* 5 Neb. 377; *Milton v. State,* 6 Neb. 136. The doctrine contained in the instructions, when applied to a case in which nothing further than the killing is shown, is recognized by this court in the case cited, and in some others, but we think it can have no application to cases like the one at bar. All the circumstances of the killing are shown by those who were eye-witnesses. * * * Plaintiff in error was indicted for murder in the second degree. It was for the jury to say, from all the circumstances of the case, whether the killing was murder in the second degree, manslaughter, or excusable. When all the facts and circumstances connected with the killing were presented to the jury, it was for them to say whether plaintiff in error purposely and maliciously killed the deceased, or whether the killing was unlawful, without malice, upon sudden quarrel, or unintentionally done (as testified to by plain-

tiff in error upon the stand), while the slayer was in the commission of some unlawful act, which would be manslaughter, or whether in self-defense under a reasonable apprehension of danger to life, or great bodily harm, which would be excusable." Ten years later in the case of *Kastner v. State,* 58 Neb. 767, an instruction almost word for word identical with that in this case, except for the change of names, was given, and complained of by the defendant. After stating the rule in this court as laid down in *Preuit v. People,* and *Milton v. State, supra,* the court says, speaking of the *Vollmer* case: "In that case all the circumstances surrounding the transaction had been detailed before the jury by those who were present, and saw and heard what transpired. Extenuating facts were proven tending to show want of malice and that life was taken in self-defense. Manifestly the instruction given in that case, that malice was presumed from the facts of the killing and that the crime was murder in the second degree, was highly prejudicial to the defendant. But in the case at bar no person witnessed the shooting other than Tiedeman, whose life was taken.   *   *   *· Had the proofs adduced been of such a character as to make it appear that the killing of Tiedeman was either justifiable or that the offense committed was below murder in the second degree, then the instruction criticised would have been misleading and prejudicial." The same rule was again asserted in *Lucas v. State,* 78 Neb. 454, in which the question is reexamined by Chief Justice Sedgwick, and the rule laid down in *Vollmer v. State, supra,* adhered to.

It will thus be seen that it has been the settled law of this state, since the question was first presented to this court for consideration, that in a case of homicide, where all the circumstances surrounding the transaction are in evidence before the jury, the fact of the killing gives rise to no presumption that it was done with malice, but it is for the jury to determine the motive or intent or lack of intent with which the act was done. In Good and Corcoran, Instructions to Juries, p. 309, this instruction is

set out at length, and the case of *Kastner v. State, supra*, is cited in support thereof. As we have shown, that case upholds its applicability in cases where the circumstances surrounding the killing are not in evidence, but it expressly upholds the doctrine of the *Vollmer* case that such an instruction is erroneous where all the facts are in evidence by eye-witnesses.

In this case the tragedy occurred about dusk on the principal street of the village of Minatare in the immediate presence of a large number of eye-witnesses. The evidence is to the effect that the shooting took place at the termination of a fight with fists between Kennison and Cox, in which Kennison had received the worst of the encounter. Kennison had been struck by Cox and knocked against the wall of a building. He recovered himself, drew a pistol and shot at Cox who, as a number of witnesses testify, was then standing still, six or eight feet away from him. This shot missed Cox. Cox then rushed toward Kennison, evidently to try to get the pistol, when a second shot struck his left arm. The shot which killed him followed during the struggle between them for the possession of the revolver. According to some of the witnesses for the state, the last shot was fired deliberately. The witness Pierpont, who was called on behalf of the state, testified as follows: "Q. As he pulled the gun, you say the first shot went wild? A. I think so. Q. Then what did Cox do? A. He clinched or reached for Kennison's arm. Q. Did you notice whether he got it or not? A. Yes, he got him by the wrist. Cross-examination: Q. You say Cox caught him either by the gun or the wrist? A. By the wrist, I think. Q. Might Cox have had hold of the gun at any time? A. He might have had, but I don't think he had." Other witnesses for the state told of Cox having' hold of Kennison's arm or wrist in the struggle. Kennison testifies that Cox rushed at him before he fired the first shot, that this did not stop him, that Cox grabbed him, took hold of his arm and pushed his hand up, and that the gun was discharged accidentally. The witness Snell, who testified for the

defendant, swore that Cox had hold of Kennison's hand in which the gun was held, and that after he got hold of the hand with the pistol Cox threw the hand up that had the gun in it and the gun went off.

With all these facts before the jury, the use of the weapon or the fact of killing raised no presumption of malice, and the question of its absence or existence was one for the jury to determine from the evidence under proper instructions.

The defendant complains also of the tenth instruction, given by the court upon its own motion. The portion of that instruction which is claimed to be erroneous is as follows: "And in this case, if the jury believe from the evidence that the defendant unlawfully and feloniously shot deceased, Samuel D. Cox, and that said shot caused the death of the said Cox, then, to reduce the killing from murder to manslaughter, the jury must believe beyond a reasonable doubt that the provocation for such shooting arose at the time of the shooting, and that the passion therefor was not the result of a former provocation; that such passion was either rage, anger, sudden resentment, or terror, which rendered the defendant incapable of cool reflection upon the character and result of his act, and that the act or shooting was directly caused by passion arising out of the provocation at the time of the shooting, if there was any provocation therefor shown by the evidence." This instruction in effect tells the jury that, if they believe that the defendant unlawfully and feloniously killed Cox, the killing is murder, and in order to reduce the killing from murder to manslaughter the jury must believe *beyond a reasonable doubt* that the mitigating circumstances detailed in the instruction existed, thus placing the burden upon the defendant to prove the existence of circumstances which would lower the degree of the crime. If the unlawful killing is shown, by the instruction the degree of the crime is assumed to be murder, unless the existence of provocation at the time, and passion caused thereby, was proved beyond a reasonable doubt,

that is, the higher degree of the crime must stand as established, unless it is affirmatively established on the part of the defendant *beyond a reasonable doubt* that mitigating circumstances existed, which would lower the degree of the crime, or "reduce the killing," as the instruction states, "from murder to manslaughter." Under our statutes, if the defendant unlawfully and feloniously shot and killed the deceased, he might be guilty of either murder or manslaughter, since both of these crimes are felonious, but the instruction in effect tells the jury that he is guilty of the higher degree of the crime, unless he can prove his innocence of that degree beyond a reasonable doubt. This instruction invades the province of the jury, and is clearly wrong. It deprives the jury of the right to fix the degree from the evidence produced by the state, and it imposes an unwarranted burden upon the defendant. We have repeatedly held in this state that the burden of proof in a criminal case never shifts, but remains with the state throughout the trial. An instruction which places this burden upon the defendant, or which requires him to prove beyond a reasonable doubt his innocence of a heavier degree of crime, is highly prejudicial. Counsel for the state insist that this instruction, when taken in connection with the remainder of the charge, is not erroneous, and refer to the case of *Kemp v. State*, 13 Tex. App. 561, in which the word "reduce" was used by the court in much the same manner as in the instruction complained of, but the instruction in the *Kemp* case did not require the jury to be convinced beyond a reasonable doubt that mitigating circumstances existed before they would be justified in reducing the killing from murder to manslaughter.

It is contended also by the state that, as other instructions were given in which the different degrees of the crime of felonious killing were well and fully defined, the vice of this instruction, was fully corrected. But this could not be. An instruction that is clearly wrong, and which is inconsistent with the correct rule, is not cured

by a good one. This is too well settled to require citations of authorities.

In the sixth instruction, the jury were told that the burden of proof rests upon the state to prove the charge beyond a reasonable doubt, and that this burden never shifts from the state to the defendant; but this is inconsistent with an instruction which tells the jury that, in order to reduce the crime from murder to manslaughter, certain elements must be proved beyond a reasonable doubt. The eleventh instruction also is inconsistent with this one, and the necessary result of the two instructions, taken together, would be to confuse the jury, and leave them in doubt whether merely a reasonable doubt as to his guilt of murder in the second degree would be sufficient to warrant them in fixing the degree of the crime at manslaughter, or whether it would require them to be convinced *beyond* a reasonable doubt that mitigating facts existed, before they would be justified in reducing the degree, and finding him guilty of the lesser offense, instead of the greater.

The ninth instruction complained of sets against the defendant the presumption of malice, and of murder in the second degree; the tenth assumes the existence of that degree of murder, and requires proof of a lower to be made by the defendant beyond a reasonable doubt before the jury will be justified in reducing the degree. Under the testimony in the case, these instructions were prejudicially erroneous.

The constitution guarantees a fair and impartial trial to every citizen of this state, and this demands that in the consideration of the evidence the jury must be guided in their deliberations by a correct statement of the law. It was one of the constitutional rights of the defendant that no instructions should be given the jury which would impose upon him a burden to which he was not legally subject, and the effect of which would be to prevent him from having a fair and impartial trial under the law of the land.

For these reasons, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.