Vol. 90]    SEPTEMBER TERM, 1911.                    361

In re Estate of Wilson.    Davis v. State.

## IN RE ESTATE OF WILSON.

### ANNA J. WILSON, APPELLANT, v. L. AUGUSTUS WILSON, GUARDIAN, APPELLEE.

FILED NOVEMBER 28, 1911. No. 17,018.

PER CURIAM.

---

## MAGGIE DAVIS v. STATE OF NEBRASKA.

FILED NOVEMBER 28, 1911. No. 17,263.

1. **Homicide: INSTRUCTIONS: MALICE: PRESUMPTIONS.** "The law implies malice in cases of homicide if the killing alone is shown; but, if the circumstances attending the homicide are fully testified to by eye-witnesses, it is error to instruct the jury that there is a presumption of malice from the fact of the killing." *Lucas v. State,* 78 Neb. 454.

2. **Criminal Law: INSTRUCTIONS: DEFENSE OF INSANITY: EVIDENCE.** Jurors, in determining whether an accused at the time of the commission of the alleged crime was mentally competent to distinguish between right and wrong with respect thereto, should consider all of the evidence upon the subject and should not be instructed to only consider the opinions given by experts.

3. ———: **DEFENSE OF INSANITY: EVIDENCE: REASONABLE DOUBT.** Where, during the trial of a criminal case, evidence is introduced tending to impair the presumption that the prisoner was of sound mind at the time the crime is alleged to have been com-

mitted, it devolves upon the state to prove beyond all reasonable doubt that at the time the crime was committed she was mentally competent to distinguish right from wrong with respect thereto, and she is entitled to the benefit of any reasonable doubt that may arise from a consideration of all of the evidence, or from the lack of evidence, upon this issue.

4. ——: INSTRUCTIONS. "An erroneous instruction is not cured by the mere giving of another on the same subject contradicting it." *Henry v. State*, 51 Neb. 149.

ERROR to the district court for Cedar county: GUY T. GRAVES, JUDGE. *Reversed*.

*R. J. Millard*, for plaintiff in error.

*Grant G. Martin, Attorney General*, and *Frank E. Edgerton, contra*.

ROOT, J.

The plaintiff in error prosecutes her petition to reverse a sentence of life imprisonment upon a conviction of murder in the first degree.

There is but little conflict in the testimony, other than that given by the experts. About 8 o'clock P. M., November 2, 1910, the accused, in the presence of a Mr. Hall, fatally wounded Ira M. Churchill. There is considerable evidence tending to show illicit relations between the woman and her victim, induced by a promise of marriage, during the year 1910. The accused produced four physicians, who, in answer to hypothetical questions, testified that at the time of the homicide she did not have sufficient mind and understanding to know and appreciate that the act was wrong, and the state produced five physicians who testified to the contrary. In this state of the evidence, the court, by instruction numbered 11, told the jury: "The jury is instructed that the law presumes that a person intends all the natural, probable and usual consequences of his acts; that when one person assaults another violently with a

dangerous and deadly weapon, likely to kill, not in self-defense, or in defense of habitation or property, and not in a sudden heat of passion or sudden quarrel, and the life of the person thus assaulted is actually destroyed in consequence of such assault, then the legal and natural presumption is that death or great bodily injury was intended, and in such case the law implies malice and such killing would be murder."

The law is well settled in this state that, where the circumstances attending the homicide are proved by eye-witnesses, it is error to instruct that malice will be implied from the killing. *Vollmer v. State,* 24 Neb. 838; *Lucas v. State,* 78 Neb. 454; *Kennison v. State,* 80 Neb. 688. A majority of the court are of the opinion that, since it is clear from the evidence that the only possible legal excuse for the homicide was insanity, the instruction, while erroneous, was not prejudicially so.

We are of opinion that the court erred in giving its instruction numbered 23, which is as follows: "The opinion of the medical experts are to be considered by you, in connection with all the other evidences in the case, but you are not bound to act upon them to the entire exclusion of other testimony. Taking into consideration these opinions, and giving them just weight, the accused was or was not of sound mind, yielding her the benefit of a reasonable doubt, if such arises from the evidence." The tendency of this instruction is to withdraw from the jury's consideration, in determining the issue of sanity, all evidence, other than the opinions of the experts. Jurors are not necessarily bound by the opinion of experts; such opinions are but evidence to assist the jury in finding an essential fact; they should not be arbitrarily or capriciously rejected, but the other evidence may be of such a character and of such convincing weight that the jury may accept it in preference to the opinions.

Mr. Justice Curtis, in his charge to the jury in *United States v. McGlue,* 1 Curtis (U. S. C. C.) 1, 10, in a

prosecution for felonious homicide on the high seas, well said: "But these opinions, though proper for your respectful consideration, and entitled to have, in your hands, all that weight which reasonably and justly belong to them, are nevertheless not binding on you, against your own judgment, but should be weighed, and, especially where they differ, compared by you, and such effect allowed to them as you think right; not forgetting, that on you alone rests the responsibility of a correct verdict." See, also, *Davis v. School District*, 84 Neb. 858. This instruction also might lead the jury to believe they should not give the accused the benefit of· a reasonable doubt in considering whether she was of unsound mind, unless the evidence of the experts created that doubt.

Insanity is not an issue by itself to be passed on separately from the other issues in a criminal case, but is involved in the plea of not guilty. 2 Bishop, New Criminal Procedure, sec. 673. True. it is that the presumption of sanity, if not rebutted, sustains that issue in the state's favor, but if at any stage of the trial evidence is introduced, whether by the state or by the defense, tending to impair or weaken that presumption, then the state should not prevail, unless after a consideration of all of the evidence the jury find beyond a reason-· able doubt that the accused at the time of the crime had mind and understanding sufficient to know and to understand that the alleged act was wrong. *Knights v. State*, 58 Neb. 225; *Davis v. United States*, 160 U. S. 469; *People v. Garbutt*, 17 Mich. 9, 97 Am. Dec. 162. In such a case a reasonable doubt may arise from a lack of evidence to prove that the accused was mentally responsible within the meaning of the law. It is true that in other instructions the court told· the jury that, if after a consideration of all of the evidence they entertained a reasonable doubt of the defendant's guilt, they should acquit, and that, if they found that any of the material facts assumed in the

Davis v. State.

hypothetical questions to be true were not so, they might reject the opinions based thereon, yet the most that can in reason be said concerning their effect on instruction 23 is that the jury might not have been misled by it.

We have held that the giving of inconsistent and contradictory instructions with respect to a material issue is ordinarily prejudicial error, and we find nothing to take this case without the general rule. *Henry v. State,* 51 Neb. 149.

Since the case must again be tried, we think it proper to say that there is no testimony in this record to the effect that any witness's reputation for truth or veracity is bad in the neighborhood where he resides, and if on the next trial the proof shall be in the same condition it will be the part of prudence to eliminate that feature from the instructions. Neither do we discover any evidence that the accused was laboring under a delusion at the time she killed Churchill. We also think that instructions 30 and 31 should more clearly state the necessity for the state to prove that the accused was of sound mind within the meaning of the law.

Instruction numbered 7, if given, should be made more definite, so there can be no reason to say that the jury might find the accused guilty of murder in the first degree, if they found that the intention to kill and the killing were coincident in point of time.

The judgment of the district court, therefore, is reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., FAWCETT and SEDGWICK, JJ., concurring.

We think that the majority opinion is right, also that the instruction first quoted in the opinion and the thirtieth and thirty-first instructions given by the court were erroneous and prejudicial to the defendant. The jury were told that "when one person assaults another violently with a dangerous and deadly weapon, likely to

kill, not in self-defense, or in defense of habitation or property, and not in a sudden heat of passion or sudden quarrel, and the life of the person thus assaulted is actually destroyed in consequence of such assault, * * * such killing would be murder." Thus the court recited to the jury precisely the things which this defendant did, and tells the jury that such action "would be murder;" and so the defense of insanity was wholly eliminated. We think this would be prejudicial to the defendant, since her sole defense was insanity. The instruction is absolutely wrong and prejudicial in this case, because all of the circumstances of the killing are admitted, and there was no room for presumption to arise therefrom, and this instruction plainly tells them that the fact of the shooting raises the presumption that it was malicious; that that presumption is a legal presumption, and is so strong that under the existing facts the defendant is guilty of murder in the first degree. This decides for the jury the question of legal malice, which depends upon her sanity, which was the only question involved in the case. This instruction, there being no dispute about the facts accompanying the shooting, is prejudicially erroneous under the decisions in *Vollmer v. State,* 24 Neb. 838; *Lucas v. State,* 78 Neb. 454; *Kennison v. State,* 80 Neb. 688.

The thirtieth instruction given by the court is as follows: "In this case the jury will be warranted in convicting the defendant, Maggie Davis, of murder in the first degree, if you find the following facts from the evidence beyond a reasonable doubt: First. That Ira M. Churchill is dead, and that he died in the county of Cedar, state of Nebraska, on the 2d day of November, A. D. 1910. Second. That the said Ira M. Churchill died from the effect of the pistol-shot wound inflicted on him by the defendant in the manner and by the means specified in the information. Third. That the defendant without legal excuse inflicted the said wound upon the said Ira M. Churchill with the purpose and with the

intent to thereby kill him; and the said wound was so inflicted by the defendant upon the said Ira M. Churchill by her deliberate and premeditated malice. Fourth. That said wound was inflicted by defendant upon the said Ira M. Churchill in the county of Cedar, and state of Nebraska, on the 2d day of November, 1910, or at some time prior to his death. If you have so found these facts, it is your duty to find the defendant guilty of murder in the first degree." There was no question that plaintiff in error shot the deceased. That fact was not disputed. The defense presented was that at the time of the killing she was not of sane mind. It will be observed that this defense was wholly eliminated by the instruction. At the beginning of the instruction the jury were told that they would be warranted in convicting the accused of murder in the first degree, if they found the facts stated therein to have been proved beyond a reasonable doubt, and, at the close, they were informed that if they found these facts it was their duty to find the defendant guilty of murder in the first degree. This closed the door upon the only defense offered, for there is not one word in that instruction directing the jury that they must find beyond a reasonable doubt that the accused was sane at the time of the killing, which the law clearly requires, and which is the settled law of this state.

It may be said that the use of the words "without legal excuse," as found in the third clause of the instruction, was sufficient to cure the vice of the instruction. But such could not be the case, for in the twenty-first instruction the subject of "legal excuse" is presented, and the jury were informed that "the law recognizes no such rule in criminal law, popularly known as the 'unwritten law'; that, even if you believe from the evidence that the deceased, Ira M. Churchill, had wronged the defendant and deceived her, this would not afford her *a legal excuse* to take his life," provided she was able to distinguish right from wrong as to the particular act complained of. Here the jury were told that the fact she had been

wronged furnished no "legal excuse" for killing the
deceased. With this direction as to what constituted a
"legal excuse," nothing would be more natural than that
the jury should adopt as their guide this definition, and
thus the defense of insanity would be entirely excluded.
It is universally held by all courts that the giving of an
erroneous instruction upon a material issue cannot be
cured by other inconsistent instructions which correctly
state the law. It is also a well-known rule that, if by
an instruction an effort is made to cover the whole case,
all the elements necessary to the commission of the crime
must be included, or the instruction will be bad. It is
also so well settled as to be elementary that instructions
should be so formed as to be applicable to the evidence as
presented in the case on trial, and to that evidence alone.
The same vice occurs in the thirty-first instruction,
which directs the jury to find the accused guilty of
murder in the second degree, if they find that the killing
was done without premeditation and deliberation.

We think these instructions were clearly erroneous,
prejudicial, and constitute reversible error.

BARNES, J., dissenting.

I cannot concur in the majority opinion. As I read
the bill of exceptions, the fact that the defendant
actually formed the purpose to kill the deceased, Ira M.
Churchill, and deliberated and premeditated upon it for
a long time before she committed the offense, is clear;
that thereafter she deliberately killed her victim by
shooting him with a revolver, which she declared was
purchased for that purpose. To such a state of facts
the rule announced in *Lucas v. State*, 78 Neb. 454, has,
to my mind, no application. It clearly appears that the
only defense relied on by the accused was that of
insanity, and upon that question the verdict of the jury
was amply sustained by the evidence. In fact, I am
unable to see how they could have arrived at a different
conclusion. As I understand the majority opinion, the

reversal is predicated upon an alleged inconsistency in the charge to the jury, and a failure to mention the matter of insanity in one of the main paragraphs of the instructions. Upon those questions, it may be said that if each paragraph of the instructions is considered separately, and without reference to the other paragraphs, it is possible that they may appear to be slightly inconsistent; but when they are considered together they fairly state the law. It is an easy matter to select an isolated portion of a lengthy charge to the jury and find that, standing alone, it does not state the law. The whole charge must be considered together. Again, it is impossible to introduce qualifying phrases into every sentence containing the statement of a general legal proposition. If the instructions as a whole inform the jury what the law is with reference to a crime, and also give the defendant the benefit of a correct statement of the law regarding his defense, it is sufficient. The jury in this case were repeatedly told in varying phraseology that, if at the time of doing the act the accused was not of sound mind, she should be acquitted; and if the evidence whether she was sane or insane was evenly balanced, or if they entertained a reasonable doubt as to her sanity, she should be acquitted.

From reading the whole charge, it seems clear that the jury were not misled in any manner, and clearly understood that the instructions criticised were to be considered in connection with the other instructions given with reference to the defense of insanity. To believe otherwise is to presume that the jury were not composed of men of ordinary intelligence.

Where a judgment is based on a correct verdict, it should not be reversed, unless it appears that the instructions were clearly misleading. While the instructions in this case are not so clear and concise as they should have been, still I am unable to see how they could have resulted in any prejudice to the substantial rights of the accused.

27

The record as a whole reflects a fair trial and a just verdict, and I am of opinion that the judgment should be affirmed.

LETTON, J., concurs in the foregoing dissent.