### ROY JOSEPH BRAUNIE v. STATE OF NEBRASKA.

FILED DECEMBER 4, 1920.   No. 21685.

1. Criminal Law: INSANITY: EXPERT EVIDENCE. A physician in general practice, who has had experience in cases of insanity, *held* to be entitled to testify as an expert on the question of the insanity of the accused, though he is not a specialist in nervous diseases and testifies that he is not an expert on insanity.

2. ——: NEW TRIAL: MISCONDUCT OF JUROR. A showing that a juror went to sleep during the taking of testimony is not ground for a new trial, when it does not appear how long he remained asleep, nor that the testimony introduced during that time was of any extent or importance, or whether it was favorable or unfavorable to the defendant.

3. ——: HOMICIDE: INSTRUCTION AS TO MANSLAUGHTER. In a trial for murder, where the undisputed facts show that defendant did the killing, and where there is no evidence of provocation by the deceased or other mitigating or extenuating circumstances, which would reduce the crime to manslaughter, it is not the duty of the court to instruct upon manslaughter.

4. ——: ——: INSTRUCTION AS TO MALICE. Though the malice, engendered in the heart of the defendant, must have been without legal justification or excuse in order that he be found guilty of murder in the first or second degree, yet, where there is no

evidence tending to show such justification or excuse, the court is not called upon to cover that matter in the instructions.

5. **Homicide: PASSION.** Passion, no matter how violent, will not reduce the crime to manslaughter, unless there has been adequate provocation, such as would naturally and reasonably arouse the passions of an ordinary man beyond his power of control, and where it appears that the defendant and his employer had heated words over the work being performed, and that the employer told the defendant, in substance, that he was discharged, such circumstances, as a matter of law, do not constitute such adequate provocation.

ERROR to the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed.*

*T. F. Neighbors,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *J. B. Barnes, contra.*

FLANSBURG, J.

Defendant was convicted of murder in the first degree and sentenced to life imprisonment. He brings the case here for review.

Objection is made to the sufficiency of the evidence. It seems that defendant, a man 24 years old, had been employed as a farm hand on the farm of John Watts. He soon acquired a dislike for Watts, and stated to the boys on the place that he intended to get a revolver and, if he had trouble with Watts, would kill him. A few days thereafter, defendant was working in the field with a team of colts and had difficulty with them. Watts appeared, and defendant and Watts had heated words, ending in the defendant being discharged. Defendant then ran to the milk house, got a rifle, and, as Watts passed some 15 feet away, and was entering the door of the farm house, defendant shot him. Watts died 18 hours afterwards. The defendant's plea was "not guilty on the ground of insanity."

On the question of insanity the testimony of experts was introduced both on behalf of the defendant and also for the state. No hypothetical questions were asked, but

these witnesses based their opinions on their examinations of and conversations had with the defendant before the time of trial. The witnesses for the state testified that defendant was sane. One expert witness, on behalf of the defendant, said that from the discussion he had with the defendant he believed defendant would have had no understanding as to what was right or wrong, with reference to the act committed. The jury had before it the history of the crime, showing defendant's actions, statements and conduct for a considerable time both before and after the shooting, as well as the testimony of experts that the defendant was sane. There is ample to support the verdict.

One physician, called by the state, testified that he was a graduate of a regular medical school, had been licensed to practice and had been engaged in regular practice for 34 years; that he had had experience in insanity cases, and was, in fact, serving as medical examiner on the county insanity board; but he stated that he was not an expert on insanity matters. This witness, over defendant's objection as to his qualifications, was allowed to give expert testimony on the question of defendant's sanity. Such testimony was not improperly received. It is the function of the court to determine the qualifications of a witness, offered as an expert, from the showing of fact as to the study made and knowledge acquired by the witness upon the particular matter in question. The conclusion of a witness, as to whether or not he is an expert, is not binding on the court. It is apparent, in this case, that what the witness intended to convey by his assertion that he was not an expert was that he was not a specialist in matters of insanity. It was, however, not necessary that he be a specialist. If it appears to the court that the witness has had an opportunity to make special study and has done so, and has thus acquired knowledge and has had experience in reference to the matter, beyond that of ordinary persons, he may be allowed to testify as an expert. The extent, then, of such

knowledge and experience bears upon the weight to be given to his testimony by the jury. *Spaulding v. City of Edina,* 122 Mo. App. 65; *Pecos & N. T. R. Co· v. Coffman,* 56 Tex. Civ. App. 472; *Castner v. Sliker,* 33 N. J. Law, 95; 22 C. J. 675, sec. 765.

Counsel for defendant contends that the court erred in ordering that the defendant submit himself to an oral examination by the medical witnesses for the state, for the purpose of giving them an opportunity to pass upon his sanity, since such an order compelled the defendant to give testimony against himself. The record does not show that any such order was made, and the testimony, furthermore, does show that the conversations had with the defendant by these witnesses were of an entirely voluntary nature on his part.

The county attorney, in his argument to the jury, stated that he had been instructed by the court to have certain doctors examine the defendant upon the question of insanity, and the defendant contends that such statements made by the county attorney are prejudicial. The record does not show that any such order had been made by the court and the remarks were outside the record and were properly excepted to. The entire argument of the county attorney is, however, shown in the transcript. It is quite temperate and entirely fair, and it is apparent that no prejudice could have resulted from the statements complained of.

Misconduct of the jury is urged as ground for a new trial. By affidavit, attached to the motion for a new trial, it is set out that one of the jurors went to sleep while testimony was being taken and appeared to pay but very little attention to the testimony or argument of counsel. The length of time the juror was asleep is not shown, nor does it appear what testimony was introduced during that time, nor that it was of any importance or extent, nor whether favorable or unfavorable to the accused. There is no showing that the defendant was in any way prejudiced. 16 C. J. 1170, sec. 2677. Whether

or not this juror paid such attention to the trial as to intelligently comprehend the proceeding and hear the testimony was a matter open to the trial judge and was necessarily passed upon by him when the motion for a new trial was overruled. No objection on this ground was made by the defendant during the course of the trial, and there is nothing in the affidavit, as we view it, to question the sound judgment of the trial judge that the juror was sufficiently attentive.

Error is predicated on the giving of the following instruction: "Malice in law includes, but is not confined to, hatred, ill-will, or desire for revenge. It may for the purposes of this case be defined as that condition of the human mind which shows a heart regardless of social duties and fatally bent on mischief, the existence of which is inferred from the acts done or words spoken."

Defendant makes two objections to this instruction: First, he contends the instruction infers that malice is, in law, presumed from the facts shown in this case; and, second, that the instruction does not inform the jury that, even though the condition of mind described be found to exist, still it should not be considered malice if found to have been produced by adequate provocation on the part of the deceased, in which event such emotions would, in law, have been justifiable or excusable.

As to the first objection, the defendant relies upon the decisions in *Flege v. State,* 90 Neb. 390, *Davis v. State,* 90 Neb. 361, and *Vollmer v. State,* 24 Neb. 838, where it is decided that malice cannot be presumed, as a matter of law, from the fact of killing, when all the circumstances surrounding the killing are shown, and that the question of malice must then be left to the jury. We do not believe the instruction open to the objection made, since it does not instruct that malice is to be inferred from the fact of killing, but, as we interpret it, the jury is informed that the jury itself is to determine the question of malice, and that it may infer malice from the acts done and things said. As to the matter complained of, the instruction is the same

as was approved in *Vollmer v. State, supra,* and *Carr v. State,* 23 Neb. 749.

As to the second objection, the definition of malice, though, perhaps, incomplete if given in a case where the evidence was sufficient to reduce the homicide to the crime of manslaughter, since the emotions described in the instruction, if caused by adequate provocation, would not have constituted malice, yet was sufficient here, where there is no evidence of provocation, nor of extenuating or mitigating circumstances, adequate to reduce the crime to manslaughter. All that could be inferred is that the deceased, by his remarks, had provoked the defendant to anger. That such manner and extent of provocation is insufficient, in law, to mitigate the offense is beyond question. 21 Cyc. 743.

The court in its instructions defined the crime of murder in the first and in the second degree and defined the crime of manslaughter, but neglected to instruct what provocation or cause would be adequate to reduce the offense from murder to manslaughter. The only possible defense in this case was insanity. No prejudice could have resulted to the defendant by a failure to instruct fully on manslaughter, since there was no evidence in the record by which the homicide could have been reduced to that lower degree of crime. *Davis v. State, supra.* There being no evidence tending to establish manslaughter, it was not the duty of the court to instruct upon that degree of the crime. *Williams v. State,* 103 Neb. 710. And by the jury's verdict, that the accused was guilty of a deliberate and premeditated murder and not of murder in the second degree, it becomes quite apparent that the defendant was not prejudiced by the failure of the court to instruct fully as to the crime of manslaughter, or to inform the jury under what circumstances malice, as defined in the instruction, would be legally justifiable or excusable. Ann. Cas. 1913A, 735   (*People v. Brown,* 203 N. Y. 44).

AFFIRMED.