Egbert v. State.

---

CHARLES L. EGBERT V. STATE OF NEBRASKA.

FILED MAY 8, 1924.   No. 23561.

Homicide: INSTRUCTIONS: MALICE: PRESUMPTION. Where an eyewitness called by the state, in a prosecution for murder in the second degree, explains the circumstances surrounding the homi-

cide and testifies to facts tending to show that it was the result of an accident occurring without malice, it is error to instruct the jury that malice may be presumed from the homicidal act and the use of a deadly weapon.

ERROR to the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Reversed.*

*Stiner & Boslaugh* and *Charles E. Bruckman,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., and REDICK, District Judge.

ROSE, J.

In a prosecution by the state in the district court for Adams county, Charles L. Egbert, defendant, was convicted of murder in the second degree, and for that felony was sentenced to serve a term of 15 years in the penitentiary. Charles R. Gordon, the son-in-law of defendant, was the victim of the homicide. As plaintiff in error, defendant presents for review the record of his conviction.

Defendant was a practicing physician residing at Hastings. His family consisted of himself, his wife, one daughter, and Charles R. Gordon, the daughter's husband, and Mary Mitchell, a sister of defendant's wife. The home of defendant had been the home of the others. Prior to the homicide Mary Mitchell was taken to a hospital in Hastings for a surgical operation which defendant performed. She had not returned at the time of Gordon's death. Defendant was absent from home February 13, 1923, and when he returned his daughter and her husband were missing, but he found them elsewhere in Hastings the next day and visited them almost daily during their absence. The wife of defendant was taken to a sanitarium in Hastings for treatment February 17, 1923, where she remained for a considerable time. While defendant was alone in his house February 21, 1923, his daughter and her husband entered

unannounced in the forenoon. Gordon was shot and killed
a few minutes later. Defendant was charged with murder
in the first degree. He pleaded not guilty, and upon a
trial the jury rendered a verdict of murder in the second
degree.

The accusation was that defendant unlawfully, purposely,
feloniously and of his deliberate and premeditated malice
shot and killed Gordon—murder in the first degree. Un-
der the law of Nebraska malice is an element of murder
in the first degree and also in the second degree, the latter
excluding deliberation and premeditation. The theory of
the defense under the plea of not guilty was that the dis-
charging of the revolver was accidental, without malice
and without any intention to harm Gordon, the explana-
tion of defendant at the trial being: While making pro-
fessional calls at night it was his custom to carry a re-
volver for his own protection. Late during the night just
preceding the homicide defendant came home and was the
only one in his house. He threw his revolver on a table
and retired. He arose during the forenoon and went to
the basement in his bath-robe. While there his daughter,
using a key which she had taken with her when she left,
unlocked the front door and entered. Upon returning to
the first floor defendant found and greeted her. He picked
up his revolver intending to put it away. Gordon, who had
accompanied his wife, but who had been standing inside
the front door unobserved by defendant, rushed at him and
grabbed him and his revolver. A struggle ensued during
which the revolver was accidentally discharged twice, fa-
tally injuring Gordon. This in substance is the explana-
tion of defendant, and his testimony tends to prove that
the homicide occurred without malice, in the manner indi-
cated, but in this outline, given as it is for the mere pur-
pose of indicating the nature of the defense, no opinion on
the merits of the plea of not guilty is expressed or even in-
timated. With the record of the trial presenting this de-
fense, supported as it was by competent evidence, the trial
court instructed the jury as follows:

"In a case of homicide the law presumes malice from the unlawful use of a deadly weapon upon the fatal part or with fatal result, and when the fact of unlawful shooting or killing causing death is proved, and no evidence tends to show express malice on the one hand, or any justification, mitigation or excuse on the other, the law implies malice, and the offense is then murder in the second degree.

"You are instructed that in law a loaded gun is a deadly weapon, and if you believe from the evidence beyond a reasonable doubt that the defendant herein wantonly, cruelly and without justification or excuse, shot and caused the death of Charles R. Gordon, or that he unlawfully caused the death of Charles R. Gordon with a deadly weapon, then the law presumes that such shooting was done maliciously, unless you believe from the evidence that it was done without malice."

Objections to this instruction were properly preserved. It is the subject of one of the principal assignments of error. Under the criminal law of this state the instruction was erroneous when applied to the circumstances disclosed by the evidence. The burden was on the state to prove the guilt of defendant beyond a reasonable doubt, including the essential element of malice. There were only two living eye-witnesses to the homicide—defendant and his daughter. Defendant testified to circumstances surrounding the shooting. He was a competent witness in his own behalf. His explanation, if believed by the jury, tended to disprove malice. There was evidence that the shooting occurred without malice. The daughter was called by the state and testified to the surrounding circumstances, implying that defendant was not prompted by malice. It was for the jury to determine from all circumstances properly disclosed whether the element of malice was proved. The instruction permitted the jury to base a finding of malice on a presumption when they had before them evidence of surrounding circumstances tending to show that defendant was not actuated by malice. To permit the jury to infer malice from the use of a deadly weapon under the circumstances

Egbert v. State.

was to deprive defendant of the benefit of evidence implying that the homicide was accidental. It has been announced time and again that this is not the law applicable to a case like the present one. It was held in *Vollmer v. State*, 24 Neb. 838:

"On a trial for murder in the second degree, malice can be implied only in cases where the killing alone is shown. Where, in such a trial, the evidence showed all the circumstances connected with the killing by the testimony of the eye-witness, it was held to be error for the court to instruct the jury that, where the fact of killing was established, without any excuse or explanatory circumstances, malice was presumed and the crime would be murder in the second degree."

In discussing this rule it was said in a later case:

"The presumption as to the motive of the homicide which the law derives from the mere act of killing arises from the necessity of the case. It is a presumption of fact. If the fact of the killing is proved, and none of the circumstances surrounding the act are shown, the existence of a motive and purpose to kill unlawfully is presumed, until the contrary appears; but, if the circumstances of killing are shown, then no presumption obtains. The motives actuating the defendant are to be derived by the jury from the circumstances surrounding his act." *Lucas v. State*, 78 Neb. 454.

Later opinions are to the same effect: *Kennison v. State*, 80 Neb. 688; *Flege v. State*, 90 Neb. 390.

Since the presumption of malice falls when eye-witnesses testify to the circumstances surrounding the homicide, the instruction under consideration cannot be justified by assuming that the facts were not all told. The error affected a fundamental right of defendant. He was deprived of the benefit of both law and evidence which protect other defendants similarly jeopardized. To hold in the reviewing court that defendant was not prejudiced would be to decide in a proceeding in error an issue of fact within the exclusive province of the jury. The conviction cannot be per-

mitted to stand. On account of the erroneous instruction, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Homicide, 30 C. J. p. 346, sec. 599.