Note—See Specific Performance, 36Cyc. 700 n. 84, 772 n. 37, 773 n. 48—Vendor and Purchaser, 39Cyc. 1422 n. 30, 1526 n. 99, 1671 n. 88, 1686 n. 20, 2086 n. 75.

---

### WILLIAM T. WHITEHEAD V. STATE OF NEBRASKA.

#### FILED JANUARY 13, 1927. No. 25429.

1. **Homicide.** According to the Criminal Code, "Whoever shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree." Comp. St. 1922, sec. 9545.

2. ——: ELEMENTS: PROOF. A purpose to kill and malice are material elements of murder in the second degree and, under a charge therefor, both must be proved beyond a reasonable doubt.

3. ——: INSTRUCTIONS. Where the evidence does not prove a higher grade of homicide than manslaughter, it may be preju-

dicial error to submit to the jury the issue of murder in the second degree, though the trial results in acquitting accused of the graver offense and in finding him guilty of the lesser.

4. ———: ———. Where eye-witnesses in a prosecution for murder testify to the circumstances surrounding the homicide, it is error to instruct the jury that there is a presumption of malice from the homicidal act.

5. Criminal Law: MISCONDUCT OF JUROR. Misconduct of the county attorney in an argument to the jury and misconduct of a juror in repeating to other jurors a rumor not in evidence, disapproved.

ERROR to the district court for Seward county: HARRY D. LANDIS, JUDGE. *Reversed.*

*R. S. Norval* and *Harry L. Norval,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

In a prosecution by the state it was charged that William T. Whitehead, defendant, in Seward county, purposely feloniously and maliciously struck Andrew Blevins on the head with a pitchfork July 24, 1925, that as a result Blevins died July 25, 1925, and that defendant thus committed murder in the second degree. Defendant pleaded not guilty. Upon a trial he was convicted of manslaughter and for that felony was sentenced to serve a term of seven years in the penitentiary. As plaintiff in error he presents for review the record of his conviction.

It is first argued as a ground for reversal of the conviction that the trial court erred in submitting to the jury the issue of murder in the second degree, since, as contended, there was no evidence of the homicidal purpose and the malice essential to that felony. Murder in the second degree is defined by statute in the following language:

"Whoever shall purposely and maliciously, but without

deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree." Comp. St. 1922, sec. 9545.

According to this statute a purpose to kill and malice are material elements of murder in the second degree and, under a charge therefor, the burden is on the state to prove both beyond a reasonable doubt. Where the evidence does not prove a higher grade of homicide than manslaughter, it may be prejudicial error to submit to the jury the issue of murder in the second degree, though the trial results in acquitting accused of the graver offense and in finding him guilty of the lesser. *Botsch v. State,* 43 Neb. 501; *Williams v. State,* 103 Neb. 710; 30 C. J. 398, sec. 642.

Did the state prove beyond a reasonable doubt malice and the purpose to kill? Eye-witnesses for the state testified in detail to the circumstances surrounding the homicide. The tragedy occurred in a field on the farm of Ed Welch where grain-threshing was in progress. From a hayrack on a low wagon defendant pitched a load of bundles into the thresher, turned his team, drove a few feet away, stopped, and called Blevins who, at the time, was on a grain wagon at the spout of the thresher. Responding to the call, Blevins dismounted, walked to defendant's wagon, and leaned against the hayrack. At the time defendant was in a stooping posture on the wagon. Both were unarmed. Conversation ensued for perhaps two or three minutes. Blevins used violent language and called defendant a "liar." Defendant seized a pitchfork near him on the hayrack and with it struck Blevins a blow on the head. Blevins fell backward on the ground, apparently unconscious, and died a few hours later. When he fell, defendant jumped off the wagon, stuck the pitchfork in the ground, attempted to raise his victim's head, fanned him with a hat later, asked a bystander to call a physician, and gave still further assistance. Blevins wore overalls with two outside hip pockets. He had previously carried a revolver and had shot a man. These facts had been communicated to defendant. The circumstances outlined were disclosed by witnesses for

the state.  There was also testimony by defendant tending
to prove that his purpose in calling Blevins was to talk in
a friendly way about a rumor that the latter did not want
defendant to pitch bundles for him.  The theory of the de-
fense was that, at the critical moment, Blevins moved his
right hand toward his right hip pocket, that defendant
thought he was reaching for a revolver, intending to shoot,
and that the fatal blow was struck at the right arm of
Blevins in self-defense, but accidentally struck him on the
head.  Defendant testified to this effect as a witness in his
own behalf.  Malice and a purpose to kill, essential ele-
ments of murder, were not shown.  There was evidence of
a conversation, perhaps two weeks earlier, in which the
privilege of defendant to procure ice from Blevins was dis-
cussed, but there was then no indication of such ill feeling
as would justify an inference of malice or homicide.  The
circumstances seemed to indicate that defendant was ap-
palled at the result of his blow and his conduct in attempt-
ing to restore Blevins tends to repel the inference of a pur-
pose to kill.  The conclusion, therefore, is that there was
no evidence to justify the submission of the issue of mur-
der in the second degree.

Did the error in submitting the case to the jury prejudice
defendant in his right to a fair and impartial trial?  The
erroneous instruction permitting the jury to find defendant
guilty of murder in the second degree was emphasized by
supplying them with a form of verdict containing a find-
ing of guilty under that charge.  The error was further ac-
centuated by the giving of the following erroneous in-
struction:

"Upon the question of intent you are instructed that the
law presumes. a sane man to intend the reasonable, prob-
able and natural consequences of any act by him intention-
ally and voluntarily done, and this presumption will always
prevail, unless, from a consideration of all the evidence
bearing upon this point, you entertain a reasonable doubt
whether such intention did exist."

The effect of this instruction was to charge the jury that.

Whitehead v. State.

the presumption of a felonious intent and a purpose to kill might be inferred from the homicidal act, to permit them to impute to defendant by inference a moral turpitude not shown by the evidence, and to cast on defendant the burden of disproving two elements of murder in the second degree. Contrary to the instruction quoted the correct principle under the Criminal Code is:

"The law implies malice in cases of homicide if the killing alone is shown, but, if the circumstances attending the homicide are fully testified to by eye-witnesses, it is error to instruct the jury that there is a presumption of malice from the fact of the killing." *Lucas v. State,* 78 Neb. 454.

For such an erroneous charge alone, when the circumstances of the tragedy were detailed by eye-witnesses, convictions have been reversed time and again. *Vollmer v. State,* 24 Neb. 838; *Botsch v. State,* 43 Neb. 501; *Whitner v. State,* 46 Neb. 144; *Kennison v. State,* 80 Neb. 688; *Davis v. State,* 90 Neb. 361; *Flege v. State,* 90 Neb. 390; *Franco v. State,* 98 Neb. 746; *Egbert v. State,* 112 Neb. 129.

The error in submitting the issue of murder in the second degree was aggravated further by the misconduct of a juror who repeated in the jury room a report that defendant had offered to plead guilty to manslaughter. It was without support in the evidence adduced at the trial. It deprived defendant of the right to confrontation, to have the witness testify under oath in open court and to cross-examination. It would have been inadmissible at the trial. The jury deliberated more than 20 hours and did not reach a conclusion until after the rumor was repeated. While the jurors afterward stated that they were in no wise influenced by it in arriving at their verdict, they cannot, as a matter of law, thus excuse such misconduct or commit the trial court or the reviewing court to their own views on the effect of the objectionable rumor repeated in secret.

The defense was still further discredited by inflammatory remarks of the county attorney in addressing the jury—remarks having no foundation in the evidence.

Error prejudicial to defendant affirmatively appears on the face of the proceedings.

REVISED AND REMANDED.

Note—See Homicide, 29 C. J. 1119 n. 90 New, 1120 n. 2,. 4; 30 C. J. 290 n. 26, 292 n. 58, 347 n. 93, 399 n. 44,. 404 n. 1; 38 L. R. A. n. s. 1094; 13 R. C. L. 777.