C. H. RUNYAN v. STATE OF NEBRASKA.

FILED NOVEMBER 28, 1927. No. 25932.

*Hoagland, Carr & Beck* and *Brown & Dibble,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

GOSS, C. J.

Defendant prosecutes error from a conviction for manslaughter for which he was sentenced to a term of seven years in the penitentiary. The amended information is in two counts. The first count charges the defendant, Runyan, in conventional terms, as a principal, with second degree murder of John Harold Sollars, by shooting him. The second count charges that one Harry Johnson, purposely and maliciously, but without deliberation and premeditation, shot and killed Sollars with a rifle, thus committing murder in the second degree, and that Runyan was present, unlawfully, purposely and maliciously aiding and abetting Johnson in the commission of the murder. The second count was authorized by section 9541, Comp. St. 1922, as amended by chapter 89, Laws 1923, which reads: "Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender." Throughout the trial, and in the instructions to the jury, the two counts were treated as if each charged the defendant as a principal, and, taken together, "as charging but one offense, as though both were included in one count." The defendant moved to require the state to elect on which count it would prosecute. This motion was overruled and no error has been argued in the briefs on this account. This is mentioned, and the counts of the information have been described, because of a certain bearing they will have on a later discussion of error relied on by the plaintiff in error.

The act resulting in this deplorable tragedy occurred in the country north of, but not far from, the city of North Platte, on the night of May 13, 1926. Those present were the defendant, who was an undercover man employed and paid by the city to aid in matters of violation of laws relating to intoxicating liquors, two police officers of the city,

a railroad special officer, who was also a deputy sheriff, and Harry Johnson, who was not an officer. In the afternoon of that day, Runyan and Hedrick, one of the officers, had gone out and seized a car, transporting liquor in this neighborhood. While taking it into the city they heard that another car, a Ford sedan or coupé, carrying liquor, was coming in from the north. On reporting to the chief of police, they were instructed to seize it. On the way out they discussed the need of more help and Hedrick telephoned for it. Greene, the other police officer, and Frahm, the deputy sheriff, came. On their way, Runyan and Hedrick picked up Harry Johnson, who was an acquaintance of Runyan, and who took them in his car. He took along his sporting rifle. The three drove to the neighborhood where the contraband car was expected and parked Johnson and his car in a gateway. As cars would approach, Runyan and Hedrick would walk forward and flag the cars and Johnson would drive his car into the roadway so as to block it. After stopping several cars in this way, the three went over to another point where Greene and Frahm were operating at the intersection of two roads. Frahm parked his car, facing south, on the east side of a north and south road, and Johnson's car was on the south side of the east and west road, but turned toward the other car, so as to leave from eight to twelve feet for a car to pass on the roadway between them. About the time these positions were taken, a car approached. Johnson remained in his car, but the other four were on the ground as a car approached, which later proved to be a Maxwell coupé with Harry Sollars and a young lady in it. The testimony shows that they were estimable young people who lived in North Platte and who were out for an innocent evening ride. Greene signalled with his flashlight for the car to stop. It slowed down, coming practically to a stop. Runyan stepped forward, accosted the occupants, and expressed a desire to look the car over. Sollars suddenly applied the gas, the car shot forward. Runyan said, " 'Stop him,' or something to that effect," and fired two shots with his revolver, one at the

left rear tire, striking the left fender, and one at the gas tank, striking above it. Greene and Hedrick did not shoot. Frahm fired his gun off in the air, not at the car. When Sollars had driven a few hundred feet, Johnson shot at his car. There is testimony that Runyan rebuked Johnson for firing with his rifle, and that shortly thereafter the fleeing car began to wobble. When the last shot was fired by Runyan, the car was not over 25 feet from him. It was conceded by the state that neither of these shots by Runyan killed Sollars, but that he was killed by the rifle shot by Johnson. The record shows that Sollars went to town and to a hospital, where he died later as a result of the shooting. Sollars drove the car part of the way in and his companion drove it the rest of the way.

The original information contained only one count, and charged Johnson, Runyan and Frahm with murder in the second degree by means of a rifle shot. Johnson was separately tried on that information, was convicted of manslaughter, and was sentenced to six years in the penitentiary. Shortly thereafter the information was amended so as to contain two counts, and to charge the defendant Runyan, only, as heretofore set forth.

. When the information was amended, so as to charge Runyan alone with second degree murder by shooting with a rifle, the prosecution well knew that this defendant did not shoot Sollars with a rifle and well knew that Johnson had been convicted of manslaughter for that act by that means in this same cause in a separate trial.

Under section 9545, Comp. St. 1922, a purpose to kill and malice are essential elements of murder in the second degree and under a charge therefor, both must be proved beyond a reasonable doubt. Under our decisions, malice is never implied or presumed as a matter of law, where the circumstances of the killing are testified to on the trial as they were in this case. *Vollmer v. State,* 24 Neb. 838; *Lucas v. State,* 78 Neb. 454; *Kennison v. State,* 80 Neb. 688; *Flege v. State,* 90 Neb. 390; *Egbert v. State,* 112 Neb. 129. So the state has to rely on the testimony,

showing the circumstances leading up to the killing, to prove malice. It would have been contrary to the instructions, in all the circumstances shown in this case, for the jury to have found the defendant guilty of murder in the second degree, because, as we view the testimony, the element of malice on the part of the defendant was lacking therefrom. This leads us directly to the question as to whether the rights of the defendant were prejudiced by the refusal of the court to withdraw the charge and the evidence relating to second degree murder from the consideration of the jury.

We have recently held: "Where the evidence does not prove a higher degree of homicide than manslaughter, it may be prejudicial error to submit to the jury the issue of murder in the second degree, though the trial results in acquitting the accused of the graver offense and in finding him guilty of the lesser." *Whitehead v. State*, 115 Neb. 143. See *Botsch v. State*, 43 Neb. 501; *Williams v. State*, 103 Neb. 710; 30 C. J. 398, sec. 642. This tendency toward error in submitting the graver charge was accentuated by submitting to the jury a form of "verdict finding the defendant guilty of murder in the second degree, as charged in the information," and was emphasized all through the closing address to the jury by the able, eloquent and vigorous special prosecutor, who said in his peroration to the jury: "It doesn't make any difference whether it was Kelly Sollars, whether it was your boy or my boy that was in that car, an awful crime was committed in Lincoln county on the 13th of last May, and the man who is responsible for it has not yet received his punishment. An awful crime. Think about that poor boy, suffering untold agonies, shot with a bullet practically tearing his abdomen to pieces; a boy just grown to manhood. I want to say to you men, you have a duty to perform. It is a duty to convict Runyan of murder in the second degree."

While the charging of the defendant with a higher degree of homicide than he was guilty of, the submitting of that charge to the jury along with a form of guilty verdict,

and the argument of counsel devoted almost exclusively to an advocacy of finding the defendant guilty of murder in the second degree are none of them absolute error, yet their cumulative effect was to wear down the individual wills of the jurors, and perchance to cause them to compromise and agree on a verdict for a lesser degree of homicide, rather than to consider only whether the accused was guilty of manslaughter or was innocent. We think it was prejudicial to the rights of the defendant. The court should, therefore, have eliminated from the consideration of the jury the charge of murder in the second degree. This conclusion renders it unnecessary for us to discuss other errors alleged and argued in the briefs. On a new trial they may not again occur.

On account of the prejudicial error found, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.