LEROY CHILDS V. STATE OF NEBRASKA.

FILED OCTOBER 10, 1930. No. 27369.

C. E. *Walsh* and R. C. *Meissner,* for plaintiff in error.

C. A. *Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LESLIE, District Judge.

DEAN, J.

October 21, 1929, Leroy Childs was informed against in the district court for Douglas county and there charged

with having, on about September 23, 1929, "unlawfully, maliciously, feloniously, and purposely, but without premeditation and deliberation, shot Albert Samples with a revolver and as a result thereof, he died on the 5th day of October, 1929; defendant thus committed murder in the second degree." The jury found the defendant guilty of murder in the second degree, as charged in the information. Thereupon the court imposed a sentence of fourteen years in the penitentiary upon the defendant. The defendant prosecutes error and prays to have the judgment reversed.

At, and for some time before the tragedy, the defendant's mother conducted a hotel in Omaha where Samples at one time roomed and boarded. On or about the evening of September 22, 1929, Samples and the defendant, with several others, were visiting at a place across the street from the Childs home and remained there until about 1:30 in the morning. At about this hour, the entire company remaining outside, the defendant entered his mother's home to get the key to her car to the end that he and his friends might go out for a drive. His mother, however, upon being informed of their plans, remarked that if Samples "has money enough to cabaret with, he has enough to pay me part of my room rent."

From the defendant's evidence it appears that his mother came out to the car as they were about to drive away on the evening in question and that, upon seeing Samples seated in the car, she asked him to settle for certain past-due room rent which she reminded him was unpaid. Thereupon she went upstairs, accompanied by Samples, ostensibly to examine an account book in the matter of the alleged room rent indebtedness, and in a few minutes the defendant followed them. However, on the defendant's appearance, Samples at once accused him of having returned to his mother's home, not for the car key as he had represented, but to inform his mother that he, Samples, had some money; and this to the end that she might collect certain unpaid room rent which she said Samples owed her. About this time Samples started down the stairway, but, according to the defendant's evidence, he turned back, and the de-

fendant testified that he observed that he had his hand on his hip. The defendant further testified that Samples then knocked his mother down and that he, the defendant, ran into a bedroom. Upon seeing a revolver on the dresser, he grabbed it and, reentering the room where Samples and his mother were, he discharged the gun into the floor. In the scuffle that immediately followed between them, the gun was accidentally discharged and Samples was thereby fatally wounded. The defendant averred that the gun in question belonged to his mother and that it was presented to her by his father for her protection. And from the evidence it appears that the defendant called the police immediately after the shooting.

In respect of the facts pertaining to the altercation, from his viewpoint, Samples made a statement at the hospital the day after he was shot wherein he said that he owed the defendant's mother for room rent. And he said that, on the evening in question, he turned to go down the stairs at her home and the defendant jumped up and began to shoot at him and that he continued shooting after he had fallen to the floor. Samples also said that there had never before been any trouble or disturbance of any nature between them and that they "were like brothers," nor had the defendant ever made any threats against him. In his statement, Samples testified that defendant's mother was between them and that he, Samples, "was trying to run around him to grab him to keep him from shooting me. I didn't want to hurt him. I believe I am a better man than him and I wanted to take the pistol away from him."

In respect of the wounds upon the body of the deceased, a physician testified that there was "a bullet wound in the left side and a bullet wound in the right side—well, I didn't know whether the wound was made by one bullet going straight through, or two bullets; one bullet wound in the left hip, and one in the right leg." This physician also testified that Samples died October 6 or 7 of traumatic pneumonia, induced by the wounds on his body, about two weeks after the shooting.

Section 9545, Comp. St. 1922, defines and fixes the punishment for murder in the second degree in the following language, namely:

"Whoever shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree; and on conviction thereof, shall be imprisoned in the penitentiary not less than ten years, or during life."

We do not think the evidence warrants a verdict of second degree murder. The record does not disclose evidence of malice on the part of the defendant toward the deceased, nor is there evidence showing purpose on the part of the defendant in shooting Samples. Samples testified in his statement at the hospital, as noted above, that he and the defendant had always been on friendly terms and that at no time did the defendant address any threatening language to him. Evidence that defendant was attempting to aid Samples after the shooting, and before the police arrived, was not permitted to be presented to the jury. We have held:

"A purpose to kill and malice are material elements of murder in the second degree and, under a charge therefor, both must be proved beyond a reasonable doubt." *Whitehead v. State*, 115 Neb. 143.

The defendant complains because the court refused, upon request, to instruct the jury on the question of self-defense, and also in that the court refused to allow a doctor, conversant with her condition, to testify in respect of the effect upon the defendant's mother when she fell from the blow of Samples' fist when he knocked her down. In view of the record, we think the court erred in excluding such evidence. Where the evidence conflicts, it is elementary that it is the duty of the jury to judge of the weight of the evidence, and it is within the province of the jury, of course, to pass upon the entire case and upon all of the competent evidence submitted to that body.

Counsel for the defense also complain of certain remarks made by the prosecuting attorney in his argument to the jury. One remark of which complaint is made fol-

lows: "Since when has the law sanctioned killing for the collection of a bill for room rent?" Clearly the remark is not pertinent to the issue and is entirely aside from the record and should not have been made. But, inasmuch as the action must be reversed for a new trial, we do not find it necessary to pursue this feature of the record further except to say that it does not meet with our approval.

The judgment must be and it hereby is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

REVERSED.