Louis Woodard, plaintiff in error, v. State of Nebraska, defendant in error.

68 N. W. 2d 166

Filed January 21, 1955. No. 33464.

*Ralph W. Hetzner,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Robert V. Hoagland,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an error proceeding from the district court for Douglas County. A jury therein found plaintiff in error Louis Woodard, defendant below, guilty of manslaughter. He thereafter filed a motion for new trial, which was overruled. He was then sentenced to serve 5 years in the penitentiary. He took this appeal therefrom. We shall herein refer to him as the defendant.

There is no question about the sufficiency of the evidence. It fully supports the jury's finding that defendant is guilty of manslaughter in causing the death of Veodist Luster, also known as Otis V. Luster, on April 21, 1952. The evidence in this respect shows, without dispute, that Woodard held the gun, a .38 caliber Smith & Wesson revolver, when it was discharged, which discharge resulted in Luster's death. The circumstances under which it happened, as testified to by the State's witnesses, are sufficient to establish manslaughter beyond a reasonable doubt. See,

Ford v. State, 71 Neb. 246, 98 N. W. 807, 115 Am. S. R. 591; Turpit v. State, 154 Neb. 385, 48 N. W. 2d 83.

The State charged: "* * * that on or about the 21st day of April in the year * * * one thousand nine hundred and fifty-two Louis Woodard * * * of the County of Douglas * * *, in the County of Douglas and State of Nebraska * * *, then and there being, then and there unlawfully, maliciously, feloniously, and purposely, but without premeditation and deliberation, did kill Veodist Luster, also known as Otis V. Luster; defendant thus committed murder in the second degree, * * *."

The trial court submitted both second degree murder and manslaughter to the jury. Defendant contends the trial court erred in submitting the issue of second degree murder because there was no evidence adduced proving, or tending to prove, malice and a purpose to kill on his part. He claims such evidence was an absolute prerequisite to warrant the submission of the issue of murder in the second degree to a jury.

Our criminal statutes provide, as to this crime, as follows: "Whoever shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree; and upon conviction thereof shall be imprisoned in the penitentiary not less than ten years, or during life." § 28-402, R. R. S. 1943.

In Whitehead v. State, 115 Neb. 143, 212 N. W. 35, we said: "According to this statute a purpose to kill and malice are material elements of murder in the second degree and, under a charge therefor, the burden is on the state to prove both beyond a reasonable doubt. Where the evidence does not prove a higher grade of homicide than manslaughter, it may be prejudicial error to submit to the jury the issue of murder in the second degree, though the trial results in acquitting accused of the graver offense and in finding him guilty of the lesser." See, also, Runyan v. State, 116 Neb. 191, 216 N. W. 656; Clark v. State, 131 Neb. 370, 268 N. W. 87.

As stated in Clark v. State, *supra:* " '* * * it is the duty of the court to instruct the jury only on such degrees of homicide as find support in the evidence.' Williams v. State, 103 Neb. 710, 174 N. W. 302."

Alice Barbara Roberts, who was present at the time the killing took place, testified she heard defendant say at the time the shot was fired, "I will blow your head off." The bullet fired hit the deceased in the right temple. From all of the testimony, particularly that of the foregoing witness, a jury could have found beyond a reasonable doubt that this remark was directed toward the deceased at the time defendant fired the shot.

Where the evidence and circumstances of the crime are such that different conclusions may properly be drawn therefrom as to the degree, the trial court is without error in submitting the different degrees to the jury for its determination. See Jackson v. State, 133 Neb. 786, 277 N. W. 92.

We said in Fields v. State, 125 Neb. 290, 250 N. W. 63: "If either Brown or the accused pointed the gun at the deceased, or some other person, and purposely fired the gun, then the intent to kill became specific * * *."

While it is true that the jury did not find such purpose and intent existed, nevertheless, we think the evidence adduced was sufficient to support such a finding if it had been made. It was therefore not only proper but the duty of the trial court to submit the issue of second degree murder.

The defendant further contends the trial court committed reversible error by giving instruction No. 12. Instruction No. 12, insofar as herein material, is as follows: " 'Maliciously' as used in the Statutes, means a malicious manner, with malice. Malice is that state or condition of mind indicated by a wicked and malicious purpose which characterizes the perpetration of a wrongful act intentionally committed, and without lawful excuse or justification. It is that quality or frame of mind

which prompts the unlawful act. This frame or condition of mind is denominated express or actual malice, and *its existence, if it does exist, is to be inferred or found by the jury as any other material element in the case —beyond a reasonable doubt;* and, in passing upon this issue, it is competent for the jury to consider the acts, language and conduct of the defendant, as shown by the evidence, in connection with all other facts and circumstances of the trial." (Emphasis ours.)

Defendant complains of that part of the instruction which we have emphasized and particularly the use of the word "inferred."

As stated in his brief: "In Instruction No. 12 wherein the Court defined the word 'maliciously' the jury was told as a matter of law that malice, 'and its existence, if it does exist, is to be inferred or found by the jury as any other material elements in the case—beyond a reasonable doubt.' Thus the jury was permitted to infer or presume malice although the law of this State expressly forbids any inference or presumption of malice when the facts attending the homicide are brought out by actual witnesses thereto."

"Malice is never implied or presumed as a matter of law, where the circumstances of the killing are testified to on the trial by eyewitnesses." Runyan v. State, *supra.*

In Whitehead v. State, *supra,* we said: " 'The law implies malice in cases of homicide if the killing alone is shown, but, if the circumstances attending the homicide are fully testified to by eye-witnesses, it is error to instruct the jury that there is a presumption of malice from the fact of the killing.' Lucas v. State, 78 Neb. 454." See, also, Vollmer v. State, 24 Neb. 838, 40 N. W. 420; Egbert v. State, 112 Neb. 129, 198 N. W. 1014; Runyan v. State, *supra.*

We have already stated that evidence was introduced by the State from which the element of malice could be found to exist. Nowhere in instruction No. 12 does the

court refer to a presumption of malice. "Infer" means to derive by reasoning or to conclude from facts. Webster's New International Dictionary (2d ed.), p. 1273, defines "an inference" as: "* * * a logical conclusion from given data or premises; * * *."

In Braunie v. State, 105 Neb. 355, 180 N. W. 567, 12 A. L. R. 658, the court gave the following instruction: " 'Malice in law includes, but is not confined to, hatred, ill-will, or desire for revenge. It may for the purposes of this case be defined as that condition of the human mind which shows a heart regardless of social duties and fatally bent on mischief, the existence of which is inferred from the acts done or words spoken.' "

Therein it was stated: "Defendant makes two objections to this instruction: First, he contends the instruction infers that malice is, in law, presumed from the fact shown in this case; * * *."

The court then went on to say, in passing on this instruction, that: "As to the first objection, the defendant relies upon the decisions in Flege v. State, 90 Neb. 390, Davis v. State, 90 Neb. 361, and Vollmer v. State, 24 Neb. 838, where it is decided that malice cannot be presumed, as a matter of law, from the fact of killing, when all the circumstances surrounding the killing are shown, and that the question of malice must then be left to the jury. We do not believe the instruction open to the objection made, since it does not instruct that malice is to be inferred from the fact of killing, but, as we interpret it, the jury is informed that the jury itself is to determine the question of malice, and that it may infer malice from the acts done and things said."

The foregoing is the exact situation here for instruction No. 12 goes on to tell the jury, in passing upon this issue, it could consider the acts, language, and conduct of the defendant, as shown by the evidence, in connection with all other facts and circumstances shown. Such is also the effect of other instructions given.

In view of what we have said we find defendant's

contentions to be without merit and therefore affirm the judgment and sentence of the trial court.

AFFIRMED.