70 N.W.2d 378 (1955)
160 Neb. 385
Eunice WASHINGTON, Plaintiff in Error,
v.
The STATE of Nebraska, Defendant in Error.
No. 33675.
Supreme Court of Nebraska.
May 13, 1955.
*379 O'Sullivan & O'Sullivan, Omaha, for plaintiff in error.
Clarence S. Beck, Atty. Gen., Robert V. Hoagland, Asst. Atty. Gen., for defendant in error.
Heard before SIMMONS, C. J., and CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.
CARTER, Justice.
The defendant, Eunice Washington, was charged with second degree murder. The information charges that on or about January 5, 1953, defendant killed Orville Washington maliciously and purposely, but without premeditation. Defendant entered a plea of not guilty. The jury found the defendant guilty of manslaughter, and the trial court imposed a sentence of 5 years in the Nebraska Reformatory for Women. The defendant brings error proceedings to this court.
The deceased, Orville Washington, was the husband of the defendant. On the evening of January 4, 1953, they drove to a bar in South Omaha where they drank some beer. They left about 11:30 p. m., accompanied by three men who had asked for a ride to North Omaha. The three men were let out at the Off-Beat Club located at Twenty-fourth and Lake Streets. Defendant and her husband went to the Elks Club, a few doors from the Off-Beat Club. Shortly thereafter the three men, who had stopped at the Off-Beat Club, came into the Elks Club. Defendant testifies that her husband assumed the men had followed them by a prearrangement with her, and *380 he became angry. Defendant and her husband left and went to their nearby apartment where the argument continued. The deceased was shot and killed in the apartment by defendant sometime shortly thereafter.
The defendant called the police after the shooting. Officer Pitman Foxall and two other officers responded to her call. Officer Foxall made a complete investigation of the premises and interrogated the defendant concerning the shooting. He thereafter took her to the police station where she made a statement which was transcribed by a shorthand reporter. Her statements to the shorthand reporter were read into the evidence by the reporter from his original notes. The evidence of Officer Foxall and the statement made by the defendant to the shorthand reporter were substantially the same.
The evidence as related by the defendant in her statement to the shorthand reporter was in part as follows: "It wasn't about anything that amounted to anything that I could see, but in the meantime we had been out and drank a couple bottles of beer or so and come home and you know how your family is, and how my family is, it is all the same thing when you are upset and I had some glasses on my kitchen table that I had unpacked * * * and he started arguing about nothing in particular and when I turned my back, Mr. Washington come by me and did this (indicating). That is how I got this bruised eye (indicating) and it made me angry and in the meantime he come out of the bedroom and he come right out in the kitchen and I had those glasses on the table and I got angry and I started throwing the glasses * * *. I threw the glasses at him * * *. I just really did what I did just to scare him * * *, and when I fired it hit him and I couldn't do it again in a thousand times and I only fired one time." The gun was a .32 caliber automatic which she kept in the house. When Washington came up behind her he brushed her or hit her and she fell into a closet, and that made her angry. She said there had been arguments on the way home from the Elks Club but it was all about nothing. She went into the bedroom and got the gun from a drawer. She came out with the gun and fired the shot. She only meant to scare him. She was only 10 feet or less from him when she fired. The bullet struck him between the eyes. She intended to shoot into the ceiling just to scare him. Several times she was asked what the argument was about and her answer was that as far as she was concerned it was an argument about nothing.
That the deceased came to his death in Douglas County as a result of being shot above the right eye is established by the evidence. Defendant admits shooting the deceased. She did not attempt to aid the deceased after he was shot. She did not call a doctor. Upon the arrival of the police she related the story without any show of emotion. She delivered the gun to Officer Foxall. One shell had been fired.
In her testimony at the trial the defendant did not question any of the pertinent facts contained in her statement. She added thereto in a substantial manner. In her evidence she testifies that Washington beat her about the head and face, causing many bruises and abrasions. She says that she feared that she was in great danger and that she threw the glasses, an ash tray, and shot the gun as a protection to her person, although she did not intend to injure him. There are photographs of the defendant, taken the day following the shooting, which show a bruise below defendant's right eye. A Mrs. Oneta Thomas testified that she saw bruises on defendant's arms and body the next day. Several witnesses testified to defendant's good reputation for being a quiet and peaceful person.
The defendant claims that the trial court erred in submitting second degree murder to the jury. The rule is: Where the evidence and circumstances of the crime are such that different conclusions may properly be drawn therefrom as to the degree, the trial court does not err in submitting the different degrees to the jury for its determination. Woodard v. State, 159 Neb. 603, 68 N.W.2d 166. The *381 evidence in the present case shows that defendant and the deceased were engaged in a quarrel at the time of the shooting. Defendant admits that she became angry, threw dishes and an ash tray at the deceased, went into the bedroom and got a loaded gun, pointed it at the deceased, pulled the trigger, and hit him in a vital spot. From this evidence a jury could find that defendant maliciously and purposely killed the deceased. Under such circumstances it was the duty of the trial court to submit the issue of second degree murder to the jury.
Defendant assigns error by the trial court in admitting a picture of the deceased into evidence. The picture shows the deceased lying on his face in the doorway between the bathroom and hall. It tends to illustrate and explain the evidence given by Officer Foxall. There is nothing about it that would tend to inflame the passions of the jury. The rule is stated in MacAvoy v. State, 144 Neb. 827, 15 N.W.2d 45, 49, as follows: "Where a photograph illustrates or makes clear some controverted issue in the case, a proper foundation having otherwise been laid for its reception in evidence, it may properly be received, even though it may present a gruesome spectacle." There was no error in the admission of the photograph.
Defendant assigns as error the rulings of the trial court which permitted the defendant to be impeached on what are alleged to be immaterial matters. In this connection the defendant was cross-examined about the gun. She said she had it several years before she was married to Washington, that she knew it was loaded, and that she intentionally pulled the trigger, although she says she did not intend to hit the deceased. She testified positively that she had never fired the gun before. The State attempted to show that she had fired it at one Charles Liggins, a former suitor. We do not think this is a collateral matter within the meaning of the rule. We are in accord with the view that the State may not inject inflammatory and highly prejudicial matters into a criminal prosecution under the guise of laying the foundation for impeachment as was done in the cited case of Swogger v. State, 116 Neb. 563, 218 N.W. 416. But in the present case the ownership of the gun and defendant's familiarity with its use were proper evidence in the case. We point out, also, that the trial court has considerable latitude in admitting evidence seeking to bring to light collateral facts bearing on the credibility of a witness. O'Connor v. State, 123 Neb. 471, 243 N.W. 650. The ruling of the trial court in regard to the scope of cross-examination will be sustained unless it amounts to an abuse of discretion. The rule is that, although a witness is permitted to be cross-examined as to matters not brought out on direct examination, the judgment will not be reversed when it appears that no prejudice could have resulted. Griffith v. State, 157 Neb. 448, 59 N.W.2d 701. The rule is correctly summarized in Rakes v. State, 158 Neb. 55, 62 N.W.2d 273, 277, as follows: "The general rule is that so far as cross-examination of a witness relates either to facts in issue or relevant facts, it may be pursued by counsel as matter of right, but when its object is to collaterally ascertain the accuracy or credibility of a witness, a latitude should be permitted, but its method and duration are ordinarily subject to the discretion of the trial judge and, unless abused, its exercise is not reversible error." We have examined the evidence as it pertains to this assignment and we find that it is within the limits of the trial court's discretion. The assignment is therefore without merit.
The defendant complains of the failure of the district court to properly instruct the jury on her theory of the case. We have stated the applicable rule in Foreman v. State, 127 Neb. 824, 257 N.W. 237, 240, as follows: "The law is well established in this state that it is the duty of the court to instruct the jury upon all the issues of the case presented by the pleadings and the evidence. In civil cases the issues are presented in writing and no other issues need be stated, but in criminal cases plea of not guilty not only puts in issue all of the material allegations of the *382 information but lets in any other matter of defense, such as justifiable homicide, self-defense, insanity, alibi, mistake and so forth; and if there is any sufficient evidence upon any of those matters to go to the jury, it is the duty of the court to instruct as to the law applicable, whether the defendant requests such instruction or not." The evidence shows the defendant alleged as defenses that she did not intend to harm the deceased and that she acted in self defense. These issues were fully presented to the jury by the court's instructions. There is no merit in the contention that the trial court failed to properly and adequately submit defendant's theory of the case to the jury.
We have examined the record with reference to the other assignments of error set out in defendant's brief. We find no merit in them. The record shows that defendant had a fair trial and that the verdict is amply sustained by the evidence. The record being free from prejudicial error, the judgment of the court is affirmed.
Affirmed.