Leonard Wymer **WALLE**, Appellant,

v.

Maurice H. **SIGLER**, Warden, Nebraska
Penal and Correctional Complex,
Appellee.

No. 71–1427.

United States Court of Appeals,
Eighth Circuit.

March 23, 1972.

Kile W. Johnson, Wilson, Barlow &
Watson, Lincoln, Neb., for appellant.

Melvin K. Kammerlohr, Asst. Atty. Gen., Clarence A. H. Meyer, Atty. Gen. of Nebraska, Bernard L. Packett, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before BREITENSTEIN,* Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is a collateral attack, through 28 U.S.C. § 2254, upon a final judgment of conviction rendered in 1968. Judge Urbom issued the certificate of probable cause required by 28 U.S.C. § 2253, and we must review. Nowakowski v. Maroney, 386 U.S. 542, 543, 87 S.Ct. 1197, 18 L.Ed.2d 282 (1967). See Gross v. Bishop, 377 F.2d 492 (C.A.8, 1967). The appeal is one in forma pauperis, with appointed counsel.

Leonard Wymer Walle, the petitioner-appellant, was convicted of second-degree murder after trial by jury in the District Court for Douglas County, Nebraska. A sentence of life imprisonment was imposed. The murder victim was Walle's wife of three weeks, Marilyn April Walle. The judgment of conviction was affirmed by the Supreme Court of Nebraska.[1] In March 1969, Walle brought this proceeding under § 2254, alleging in substance that the trial court denied him Due Process of Law and Equal protection of the Laws in violation of the Fourteenth Amendment by admitting into evidence certain photographs, and by refusing his pre-trial requests for certain "legal necessities for preparing his own defense." The parties stipulated that an evidentiary hearing was unnecessary. The matter was submitted to Judge Urbom who, in an opinion reported at 329 F.Supp. 1278, ruled adversely to Walle on both grounds of asserted error. We affirm.

I

*The photographs.* These comprise five exhibits introduced at trial by the State. Three of these depict the nude body of the murder victim lying on a slab in the morgue; the two remaining photographs purport to show the clothed and blood-stained body of the victim sprawled on the bed of the hotel room in which the murder allegedly took place. The record clearly reveals that these exhibits were introduced (a) to show the scene of the murder and the physical situation at that time; (b) to establish the identity of the deceased; (c) to show the appearance of the deceased as she appeared shortly after the killing; and (d) to disclose the location, nature, and extent of the numerous gunshot wounds inflicted upon the victim by her assailant.

The argument is made that these photographs had no probative value as to the issues at trial and that their effect and purpose was to inflame and prejudice the jury. The basis for this argument is that since Walle's defense was limited to alibi and general denial, and because he did not seek specifically to controvert the manner or cause of death, the photographs do not constitute evidence which is either relevant or material to any contested issue in the case.

■ The preliminary steps of this argument are on solid ground. Certainly it can be said without extended discussion that the introduction of photographic evidence calculated to stir up passion or unduly excite prejudice, and so lead the jury to act upon outrage, instead of competent proof, is to be thwarted and promptly suppressed. And, while the Nebraska court has sanctioned the use, in criminal trials, of documentary evidence in the form of photographs which are gruesome in appearance, it conditions admissibility on materiality or relevancy to some contested issue of fact.[2]

Where the argument fails is in its misapprehension of the role constitution-

---

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. State v. Walle, 182 Neb. 642, 156 N.W. 2d 810 (1967).

2. *See, e. g.,* State v. Williams, 182 Neb. 379, 155 N.W.2d 189, 191 (1967); Reizenstein v. State, 165 Neb. 865, 87 N.W. 2d 560, 567 (1958), modified on other

al requirements play in the formulation of rules governing the admissibility of evidence in State criminal trials. The proposition that questions of the admissibility of evidence in State criminal proceedings generally do not implicate constitutional values has found expression in the decided cases in this and in other United States Courts of Appeal.[3] As our brief analysis will demonstrate, that proposition has four-square application to the facts of the instant case.

▮ Here, as in King v. State, 108 Neb. 428, 187 N.W. 934, 938 (1922),

> "[I]t must be borne in mind that, defendant having pleaded 'not guilty,' every issue in the case was thereby controverted and it was then incumbent on the state to introduce the best evidence within its power to controvert the plea and prove defendant's guilt."

What these photographs did was to enable the witnesses better to describe and the jury better to understand the testimony concerning the description and identity of the place at which the crime occurred, the atmosphere in which the crime was committed, the identity of the victim, and the degree of the crime committed. Additionally, the pictures were material to establishing the corpus delicti of the crime charged and they tended to corroborate the prosecution's theory as to the manner and cause of death. Against this background of functions fulfilled by the questioned photographs, the trial court could readily and correctly conclude that their probative value and force clearly outweighed the danger of possible prejudice to Walle. Admit-

tedly, the condition of the uncleansed corpse, as depicted by the photographs, is gruesome. However, it must be noted that this condition is an inherent and inseparable part of the crime with which this defendant was charged.

▮ By setting forth the foregoing background, the underlying issue in this case is brought into sharp focus. In Spencer v. Texas, 385 U.S. 554, 87 S. Ct. 648, 17 L.Ed.2d 606 (1967), it was held that a Texas evidentiary rule permitting the admission of evidence of past criminal conduct in a joint prosecution for murder and recidivism did not violate the Due Process Clause of the Fourteenth Amendment. The nub of the Court's analysis is that the formulation of evidentiary and procedural rules should ordinarily be left to the States. p. 564 of 385 U.S., 87 S.Ct. 648. Here, as in *Spencer,* the question presented does not touch and concern a specific federal right. Instead, as in *Spencer,* the convicted criminal defendant relies solely on a general "fairness" approach. p. 565 of 385 U.S., 87 S.Ct. 648. The argument, so postured, thus proceeds far beyond our proper role and function in reviewing the validity of a State evidentiary policy. As *Spencer* makes clear, the introduction of evidence in State courts is exclusively governed by State law unless its introduction violates a specific federal constitutional provision. Our analysis of the facts interdicts a finding either that the utilization of the questioned photographs encroached upon a specific constitutional right possessed by Walle, or that their use produced constitutionally cognizable prejudice. Thus,

grounds and reh'g denied 166 Neb. 450, 89 N.W.2d 265 (1958) ; Pribyl v. State, 165 Neb. 691, 87 N.W.2d 201, 209 (1957) ; Washington v. State, 160 Neb. 385, 70 N.W.2d 378, 381 (1955) ; Vanderheiden v. State, 156 Neb. 735, 57 N.W. 2d 761, 767–768 (1953) ; Turpit v. State, 154 Neb. 385, 48 N.W.2d 83, 88 (1951) ; Vaca v. State, 150 Neb. 516, 34 N.W.2d 873, 876–877 (1948) ; Hampton v. State, 148 Neb. 574, 28 N.W.2d 322, 324 (1947) ; MacAvoy v. State, 144 Neb. 827, 15 N.W. 2d 45, 49 (1944), certiorari denied 323 U.

S. 804, 65 S.Ct. 559, 89 L.Ed. 642, and Bassinger v. State, 142 Neb. 93, 5 N.W.2d 222, 226 (1942). Cf. Sundahl v. State, 154 Neb. 550, 48 N.W.2d 689, 698–699 (1951) and Lee v. State, 147 Neb. 333, 23 N.W.2d 316, 319–320 (1946), overruled on other grounds Knihal v. State, 150 Neb. 771, 36 N.W.2d 109, 114 (1949).

3. See, *e. g.*, Atwell v. Arkansas, 426 F.2d 912, 915 (CA 8 1970), and cases there cited.

any error in admitting this evidence is only an error of State law. The Supreme Court of Nebraska found no such error and we certainly are not in a position to hold to the contrary.

## II

*Miscellaneous aids to the defense.* At his arraignment, Walle was represented by counsel appointed from the office of the Douglas County, Nebraska public defender. Thereafter, but prior to trial, Walle, apparently believing that the nature of the charges entitled him to counsel of his own choice, moved for the appointment of counsel not associated with the public defender's office. The motion was denied. Walle then sought and obtained leave to represent himself and to conduct and manage his own defense at trial. At the time this request was granted, however, the trial court appointed counsel from the public defender's office to serve as Walle's "technical adviser." On the day trial commenced, Walle asked that the court provide him with (1) a private cell, to be used for legal research and study; (2) access to a legal library; (3) access to a typewriter, carbon paper, and legal pads; and (4) a transcript of all testimony for each and every court session by the day. In denying this request, the trial court admonished the jailer to provide Walle with a private cell, in the event one was available, and asked the "technical adviser" to supply paper and pencils and such other of the requested items as he was able to procure. The request for a daily transcript was denied.

Neither the Supreme Court of Nebraska nor Judge Urbom could find fault with the trial court's method of handling these difficult requests. Judge Urbom, relying on Minor v. United States, 375 F.2d 170, 172 (C.A.8, 1967), certiorari denied 389 U.S. 882, 88 S.Ct. 131, 19 L. Ed.2d 177, held that "the collateral aids requested were concomitants of the right to counsel and did not survive the waiver of the right to counsel." p. 1282 of 329 F.Supp.

■ We need not rest our disposition of this issue upon the broad foundation of this divided court's holding in *Minor.* Our examination of the record fails to reveal that Walle was refused legal pads, pencils, or carbon paper. Additionally, in view of the constant availability of his "technical adviser", Walle cannot meaningfully claim that he sustained prejudice as a result of the court's denial of his request for access to a law library and to a typewriter. The trial court requested the "technical adviser" to attempt to make certain of the requested items available to Walle and the record is wholly devoid of support for the conclusion that the court's wishes were not followed.[4]

■ Walle's contention regarding entitlement to a daily transcript needs no extended discussion. While he is quite correct in the assertion that the decisional law of the Supreme Court makes available to the indigent defendant, in a deserving situation, the same access to transcripts as is possessed by the paying litigant,[5] those decisions have been confined to cases concerning the procurement of adequate appellate review. Nothing in any of the Supreme Court cases that have come to our attention even remotely suggests the novel idea of interpreting this principle to embrace the right to a daily transcript. We decline to adopt such an idea here.

Affirmed.

---

4. We observe that the "technical adviser," in addition to being at Walle's side throughout the entire trial, conducted the cross-examination of the post-mortem pathologist.

5. See, *e. g.,* Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971).